## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| BRONC MARMON and | ) | |
| SETH MARMON, | ) | |
| | ) | |
| Plaintiffs, | ) | CIVIL ACTION |
| | ) | |
| v. | ) | No. 22-2381-KHV |
| | ) | |
| RPS AUTO, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM AND ORDER

On September 22, 2022, Bronc and Seth Marmon filed suit against RPS Auto, LLC, alleging unlawful discrimination and retaliation in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12111 et seq. This matter comes before the Court on Defendant's Motion For Summary Judgment (Doc. #41) filed July 14, 2023. For reasons stated below, the Court overrules defendant's motion.

## Summary Judgment Standards

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Hill v. Allstate Ins. Co., 479 F.3d 735, 740 (10th Cir. 2007). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." Liberty Lobby, 477 U.S. at 248. A "genuine" factual dispute requires more than a mere scintilla of evidence in support of a party's position. Id. at 252.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Nahno-Lopez v. Houser, 625

F.3d 1279, 1283 (10th Cir. 2010).  Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial as to those dispositive matters for which the nonmoving party carries the burden of proof.  Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986).  To carry this burden, the nonmoving party may not rest on the pleadings but must instead set forth specific facts supported by competent evidence.  Nahno-Lopez, 625 F.3d at 1283.

In applying these standards, the Court views the factual record in the light most favorable to the party opposing the motion for summary judgment.  Dewitt v. Sw. Bell Tel. Co., 845 F.3d 1299, 1306 (10th Cir. 2018).  The Court may grant summary judgment if the nonmoving party's evidence is merely colorable or not significantly probative.  Liberty Lobby, 477 U.S. at 250–51. Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251–52.

## Factual Background

The following facts are undisputed or, where disputed, viewed in the light most favorable to plaintiffs, the non-movants.

RPS Auto owns and operates the Strickland Brothers 10 Minute Oil Change facility in Fort Scott, Kansas.  At all relevant times, RPS Auto employed Adam Meek as the shop manager and Tom Kazyak as the Chief Operating Officer.  From May of 2021 until April of 2022, Bronc and Seth Marmon (father and son) worked as Lube Technicians for RPS Auto.  During this period, RPS Auto employed no more than six people.  As a result, the facility was short staffed if employees did not show up to their shifts.

RPS Auto's employee handbook contains two relevant policies: the "Attendance" policy and the "Job Abandonment" policy.  RPS Auto provided copies of this handbook to Bronc and Seth upon their employment with RPS Auto.

The Attendance policy requires employees to provide reasonable notice to their supervisor when they know in advance that they will be absent or late to work.  As supervisor, Meek was supposed to fill out a form and submit it to Kazyak to approve the time-off request.  When Seth requested time off in the past, Meek adhered to the policy and completed the requisite form.  On occasion, however, Meek would communicate directly with employees and unilaterally adjust the schedule based on time-off requests.

The Job Abandonment policy states that RPS Auto considers an employee to have abandoned his job when he fails to show up for work or call in with an acceptable reason and misses a period of three consecutive days.

On March 29, 2022, Bronc's wife (Seth's mother), Mary Mize, suffered a hemorrhagic stroke and was taken to a hospital in Overland Park, Kansas.  Bronc was at work that day but left quickly after receiving a call from Seth.  Before leaving, Bronc informed Meek that his wife was sick and that he had to leave.  Seth was not working that day.  Before leaving for the hospital, Bronc and Seth stopped by the shop to let Meek and the assistant shop manager, Mark Schnichels (Bronc's half-brother), know where they were going.  Bronc explained to Meek that Mize had suffered "some sort of traumatic brain bleed" and that she was at risk of dying if she did not wake up soon.  Later that evening, Meek messaged Seth to ask how they were doing.  Meek and Seth spoke on two separate audio calls that night.

On March 30, 2022, Bronc and Seth again visited the shop and informed Meek and Schnichels that Mize had suffered a massive brain hemorrhage.  Bronc told them that it could be

a while before Mize woke up.  At that time, Mize was on a respirator, paralyzed and relying on a feeding tube.  Meek assured Bronc and Seth that their absence from work was understandable and that "we'll work through it."

On April 1, 2022, Seth and Meek spoke again by phone.  On that call and on other occasions over the next three days, Meek informed Bronc and Seth that they did not need to return to work until Saturday, April 9, 2022.

On April 5 or 6, 2022, Kazyak called Seth, who was visiting Mize in the ICU at the time.  Seth told Kazyak that he was in the ICU and did not have time to talk.  Neither Bronc nor Seth had any communication with Kazyak after that.

On April 7, 2022, Meek informed Kazyak about Mize's condition.  He told Kazyak that Bronc and Seth thought she had suffered a stroke and that she was currently unresponsive.  Kazyak responded with a personal story about his own illnesses and deaths in his family and made comments to the effect that you just have to "put your big boy pants on and get back to work." Kazyak told Meek that it was time to terminate the employment of Bronc and Seth and that if Meek did not feel comfortable doing it, Kazyak would handle it himself.  By that point, Bronc and Seth had been absent from work for over a week.

Between March 29 and April 8, 2022, Bronc and Seth stopped by the shop three to five times.  During the visits, Meek always asked how Mize was doing and if there were any updates on her condition.  Bronc would describe everything he knew about her current status and possible recovery, including the fact that she might be in a wheelchair for the rest of her life.

On April 8, 2022, Bronc went to the shop, clocked in and began to work.  Meek, who was present at the shop that day, informed Bronc that his job and Seth's job were terminated.  Meek showed Bronc an email from Kazyak which indicated Kazyak's plan to terminate their

-4-

employment.  Meek had tears in his eyes during this conversation.  When explaining the termination, Meek told Bronc that he had been out of contact about absences.  Bronc responded, "well, you know better than that," and Meek said, "yeah, I know."

That same day, April 8, Meek completed separation forms for Bronc and Seth.  By text message, Meek conferred with Kazyak about what to write as the reason for termination.  Meek texted, "I hate to put absenteeism with his wife in the hospital."  Kazyak responded, "Just put down for both they left without notice. Make it easy."  On the separation forms, Meek stated the cause of termination as "left without notice."

On April 9, 2022, Meek informed Seth that his employment was terminated.

On September 22, 2022, Bronc and Seth filed suit against RPS Auto, alleging associational discrimination in violation of the ADA.  Specifically, Bronc and Seth assert that RPS Auto terminated their employment because of their association with Mize, a disabled individual.

<u>**Analysis**</u>

Defendant seeks summary judgment on plaintiffs' claim of associational discrimination under the ADA, which prohibits employers from discriminating against qualified employees because of their association with a disabled individual.  42 U.S.C. § 12112(b)(4).  Because plaintiffs rely on indirect (<u>i.e.</u>, circumstantial) evidence of discrimination, the Court applies the burden-shifting framework set forth in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973).  <u>Trujillo v. PacifiCorp</u>, 524 F.3d 1149, 1154 (10th Cir. 2008).

In an associational discrimination case which involves an adverse employment action such as termination, plaintiffs establish a prima facie case by demonstrating four elements: (1) plaintiffs were "qualified" for their jobs at the time of the adverse employment action; (2) plaintiffs were subject to an adverse employment action; (3) at the time of the adverse employment action, the

employer knew that plaintiffs had a relative or associate with a disability; and (4) the adverse employment action occurred under circumstances which raise a reasonable inference that the disability of the relative or associate was a determining factor in the employer's decision.  Id. (citing Den Hartog v. Wasatch Acad., 129 F.3d 1076, 1085 (10th Cir. 1997)).

If plaintiffs state a prima facie case, the burden shifts to defendant to proffer a legitimate, non-discriminatory reason for the adverse employment action.  Id.  Once defendant offers a nondiscriminatory reason, plaintiffs must establish by a preponderance of the evidence that the legitimate reason offered by defendant was not the true reason for the adverse action but was a pretext for discrimination.  Id. at 1154–55.

Plaintiffs assert that defendant terminated their employment because of their association with Mize, an individual with a disability under the ADA.  Defendant seeks summary judgment, arguing that plaintiffs cannot establish a prima facie case of associational disability discrimination or that the termination of their employment was a pretext for discrimination.  Defendant does not dispute that plaintiffs suffered an adverse employment action when it terminated their employment.  It argues, however, that plaintiffs have not established the first, third or fourth elements of a prima facie case.

For reasons stated below, because a rational jury could find in favor of plaintiffs on each element of their prima facie case, defendant is not entitled to summary judgment on any element of plaintiffs' prima facie case.  In addition, plaintiffs have provided sufficient evidence that a rational jury could find that defendant's articulated reason for their terminations was pretextual.

## I.     Plaintiffs' Prima Facie Case Of Associational Discrimination

### A.   Whether Plaintiffs Were Qualified At The Time Of Their Termination.

Defendant argues that at the time it terminated their employment, plaintiffs were not

qualified because they did not perform the essential job function of regular attendance: they missed ten days of work and failed to submit time-off requests in accordance with the Attendance policy.

An employee is "qualified" under the ADA when the individual can perform the essential functions of the job.  Mason v. Avaya Commc'ns, Inc., 357 F.3d 1114, 1118 (10th Cir. 2004). Regular and reliable attendance can be an essential function of a job.  Id. at 1120.  Specifically, attendance and absence policies "serve an employer's legitimate business interests in keeping apprised of the status of its employees and ensuring that it has an adequate workforce to carry out its normal operations;" thus, compliance with such policies can be an essential function.  Twigg v. Hawker Beechcraft Corp., 659 F.3d 987, 1009 (10th Cir. 2011).  Even when such a policy exists, however, the manner and means by which defendant enforces the policy may be genuinely disputed.  See Orr v. City of Albuquerque, 531 F.3d 1210, 1218 (10th Cir. 2008) (genuine issue of material fact how defendant enforced policy against pregnant women).

Plaintiffs assert that defendant rarely enforced the Attendance policy and that they engaged in ongoing communications during the relevant period with their supervisor, Meek.  Plaintiffs believed that under the policy, their only responsibility was to communicate with Meek about absences and that through those communications, he essentially approved their absences.  Often, employees communicated directly with Meek and he adjusted the work schedule to account for those absences.  This evidence creates a genuine issue of material fact whether defendant uniformly enforced the Attendance policy and whether plaintiffs violated the Attendance policy or the Job Abandonment policy.

Accordingly, plaintiffs have demonstrated a genuine issue of material fact whether they were qualified for their positions at the time of termination.  The Court therefore overrules defendant's motion for summary judgment on this element of plaintiffs' prima facie case.

B.  Whether RPS Auto Knew That Mize Was Disabled At The Time It Terminated
Plaintiffs' Employment.

Defendant argues that it is entitled to summary judgment because when Kazyak terminated plaintiffs' employment, he did not know that Mize was a disabled individual under the ADA.  In support of its argument, defendant states that Kazyak only communicated once with plaintiffs, on April 5 or 6, when he spoke briefly with Seth (who was in the ICU and not able to talk).  Even so, viewing the evidence in the light most favorable to plaintiffs, Meek kept Kazyak fully informed about Mize's condition before Kazyak decided to terminate plaintiffs' employment.  Meek consistently communicated with Bronc and Seth and explained to Kazyak that plaintiffs believed Mize had suffered a stroke and that she was unresponsive.  This evidence creates a genuine issue of material fact whether Kazyak knew of Mize's condition before he decided to terminate plaintiffs' employment.  The Court therefore overrules defendant's motion for summary judgment on this element of plaintiffs' prima facie case.

C.  Whether The Circumstances Raise An Inference That Mize's Disability Was A
Determining Factor In Plaintiff's Termination.

Defendant argues that plaintiffs have not established that their termination occurred under circumstances which raise a reasonable inference that Mize's disability was a determining factor in its decision.  The Court disagrees.  Plaintiffs have presented evidence that (1) because Bronc's wife was in the hospital, Meek and Kazyak were concerned about terminating plaintiffs' employment on the basis of absenteeism; (2) immediately before Kazyak instructed Meek to terminate plaintiffs' employment, he told Meek a personal story about his own struggles with illnesses and deaths in his family, and suggested that plaintiffs should be like him and "put [their] big boy pants on and get back to work;" (3)  Kazyak instructed Meek that instead of listing absenteeism as the reason for termination, he should "[j]ust put down for both they left without

-8-

notice [and] [m]ake it easy;" and (4) when Meek explained the termination to Bronc, Meek conceded that "he knew better than that."  This evidence creates a reasonable inference that defendant did not terminate plaintiffs' employment because they left "without notice" and that Mize's disability was a determining factor in Kazyak's decision to terminate plaintiffs' employment.  The Court overrules defendant's motion for summary judgment on this element of plaintiffs' prima facie case.

## II.    Defendant's Legitimate, Non-Discriminatory Reason For Termination

Because plaintiffs have set forth a prima facie case for associational discrimination in violation of the ADA, the burden shifts to defendant to proffer a legitimate, non-discriminatory reason for its decision.  Defendant argues that it terminated plaintiffs for job abandonment in accordance with RPS Auto's Job Abandonment policy.

Because defendant has offered a non-discriminatory reason, plaintiffs must establish by a preponderance of the evidence that the legitimate reason offered by defendant was not the true reason but rather was pretext for discrimination.  Trujillo, 524 F.3d at 1154–55.  To defeat summary judgment, plaintiffs' burden is only to demonstrate a genuine issue of material fact whether the proffered reason is unworthy of belief.  Id. at 1158.  Pretext can be shown by weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its action such that a reasonable factfinder could rationally find them unworthy of credence and infer that the employer did not act for the asserted non-discriminatory reasons.  Id.  Pretext can be shown a variety of ways, including through differential treatment of similarly situated employees and procedural irregularities.  Id.

Plaintiffs have presented evidence that they provided defendant an "acceptable reason" for their absence under the Job Abandonment policy.  As explained above, plaintiffs had numerous

-9-

conversations with Meek about why they needed to be off work and Meek continually reassured plaintiffs that "we'll work through it." Meek never informed plaintiffs that Mize's medical condition was an unacceptable reason to miss work.  Indeed, Meek told plaintiffs that they did not need to return to work until April 9, 2022.  Even so, Meek identified the cause for termination of plaintiffs' employment as leaving "left without notice."  When Bronc stated that Meek knew that was not true, Meek agreed.

This evidence raises genuine issues of material fact whether defendant's stated reason that plaintiffs "left without notice" in violation of the Job Abandonment policy is worthy of belief.  The Court therefore overrules defendant's motion.

**IT IS THEREFORE ORDERED** that Defendant's Motion For Summary Judgment (Doc. #41) filed July 14, 2023 is **OVERRULED**.

Dated this 25th day of October, 2023 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge